IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| BRITTANY DANIELS, | ) | |
| | ) | |
|   Petitioner, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:22-cv-35-RAH |
| | ) | [WO] |
| FARM SERVICE AGENCY, *et al.*, | ) | |
| | ) | |
|   Respondents. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Brittany Daniels appeals from the final agency determination of the Director of the United States Department of Agriculture's (USDA) National Appeals Division that reversed the administrative judge's decision concerning Brittany's 2016 tomato crop claim made under the Noninsured Crop Disaster Assistance Program (NAP). Brittany claims the Director's decision as it concerned her producer eligibility status was arbitrary, capricious, or otherwise not in accordance with the law. Both Brittany and the Agency[1] have filed motions for summary judgment that have been fully briefed. For the reasons below, this matter is due to be remanded back to the Agency for further proceedings consistent with this opinion.

---

[1] Brittany has named as defendants the Farm Service Agency and the United States Department of Agriculture. For purposes of this Opinion, the Court will refer to them collectively as the Agency or the USDA.

1

## I.  BACKGROUND

### A. Overview of NAP

NAP provides financial assistance to farmers of non-insurable crops to protect against natural disasters that prevent crop planting or result in lower yields or crop losses. NAP is administered under the general supervision of the Farm Service Agency (FSA) and is carried out by FSA state and county committees. 7 C.F.R. § 1437.2(a).

NAP benefits are available only to eligible producers, defined as "an owner, operator, landlord, tenant, or sharecropper, who shares in the risk of producing a crop and who is entitled to share in the crop available for marketing from the farm, or would have shared had the crop been produced." *Id.* § 718.2. To avail themselves of NAP benefits, producers must submit an application for coverage (Form CCC-471), pay a service fee and a premium, file a Notice of Loss and Application for Payment (Form CCC-576), and otherwise follow NAP rules and regulations. The regulations in effect when Brittany submitted her NAP claim also required producers to "provide acceptable evidence, as determined by FSA, of . . . [a]n interest in the

commodity produced or control of the crop acreage on which the commodity was grown at the time of disaster." *Id.* § 1437.8(c)(1) (2016).[2]

FSA regulations employ a Finality Rule. Under the Finality Rule, a determination by an FSA state or county committee becomes final and binding 90 days after a producer files an application for benefits with supporting documentation. *Id.* § 718.306(a). If the FSA state or county committee erroneously approves a claim for benefits, the Finality Rule bars the Agency from recovering that payment after 90 days unless an exception to the Finality Rule applies, such as if (1) "[t]he determination was in any way based on erroneous, innocent, or purposeful misrepresentation; false statement; fraud; or willful misconduct by or on behalf of the participant." *Id.* § 718.306(a)(2), (b)(1).

### B. Brittany's 2016 NAP Claim

Brittany and her husband, Harvey Daniels, operate Daniels Farm, a family farm located in Houston County, Alabama. As a family farm operation, the Danielses jointly own farm equipment, share personal bank accounts, and share in the risk of receiving a gain or suffering a financial loss from producing their crops. (*See* Doc. 16-5 at 230–32.)

---

[2] Notably, this provision was updated in 2020 to require producers to also "provide acceptable evidence, as determined by FSA, of . . . [t]he producer's risk in the crop." 7 C.F.R. § 1437.8(c)(3) (2022). However, this additional requirement did not exist in the version of the regulation in effect when Brittany's NAP claim was filed and approved.

On March 15, 2016, Harvey purchased NAP coverage for hybrid tomatoes on Brittany's behalf. (Doc. 16-3 at 10–11.) The day before, on March 14, 2016, Brittany submitted a certification to the FSA representing that she was a limited resource and beginning farmer (*id.* at 13), which qualified her for a waiver of the NAP service fee and a 50% discount on her NAP coverage premiums, *see* 7 C.F.R. § 1437.7(g).

Fast forward to July 2016. On or before July 15, 2016, Veazey Plant Company planted tomato seeds in trays for another area farmer, Chris Grainger. (Doc. 16-3 at 33.) One invoice from Veazey Plant Company reflects that the tomato seedlings were sold to Chris Grainger, but a different copy of the invoice also contains the handwritten names of eight other individuals, including Brittany. (*Id.* at 34–35.) Sometime around September 1, 2016, Chris Grainger provided Harvey with tomato seedling transplants after the initial attempt to grow Brittany's tomato crop from seeds failed, and Harvey then planted these tomato seedlings for Brittany. (Doc. 16-5 at 215–18.) When these tomato seedlings likewise failed, Harvey[3] filed a Notice of Loss with the Houston County FSA Committee (COC) on Brittany's behalf representing that a drought caused the loss of her tomato crop. (Doc. 16-3 at

---

[3] The Court notes that Harvey also filed a notice of loss for a tomato crop in his own name that is also the subject of a petition for judicial review in this Court after the FSA retroactively denied his 2016 NAP payment. *See Harvey Daniels v. Farm Service Agency, et al.*, Case No. 1:20-cv-00939 (M.D. Ala.) (Huffaker, J. presiding).

15–16.) Brittany also submitted an FSA-578 Acreage Certification, (*id.* at 18–19), representing her claimed 100% share in the tomato crop and provided copies of the seedling invoices from Veazey Plant Company, including the copy that contained her name, (*id.* at 33–35). The COC approved Brittany's Notice of Loss, and she received a NAP payment for the loss of her tomato crop.

### C. FSA Reversal

The FSA observed a significant increase in NAP enrollment and subsequent claim payments in Houston County for 2016 and therefore it conducted a review of the local committee's claim approvals. Brittany's 2016 claim was reviewed as part of that process.

On November 9, 2020, the FSA, through its deputy administrator, informed Brittany that he had reviewed her Notice of Loss and supporting documentation, including input receipts, and had determined that she was ineligible for a NAP payment in 2016 on her tomato crop. (*Id.* at 7–9.) Specifically, he stated that Brittany's input receipts did not substantiate that she held an actual 100% risk in the tomato crop because all the input receipts she submitted were billed to Chris Grainger.[4] (*Id.* at 8.) The deputy administrator also stated that he believed Brittany,

---

[4] The deputy administrator also concluded that Brittany had misrepresented the date her loss first became apparent, (Doc. 16-3 at 8), but this conclusion was later found to be erroneous by the administrative judge, (Doc. 16-2 at 56–59). The Agency did not dispute the administrative judge's conclusion on this issue, (Doc. 16-2 at 86–87), and therefore it will not be considered in this appeal.

or someone on her behalf, certified the tomato crop as being 100% hers, "but that the risk of this crop belonged solely to Chris Gra[i]nger."[5] (*Id.*) In other words, Brittany provided no evidence to show that she had incurred any expense associated with the crop or that the Grainger invoice reflected her purchase of tomato seedlings. Therefore, due to his belief that Brittany had participated in a scheme to defeat the purpose of NAP, had made fraudulent representations, and/or had misrepresented the facts concerning her payment eligibility in an effort to collect NAP benefits in excess of a single payment limitation,[6] he determined that Brittany owed the Agency a refund of her 2016 NAP payment and that she was ineligible to participate in NAP for the 2016, 2017, and 2018 years.

### D. NAD Administrative Judge's Decision

Brittany appealed the Agency's November 9, 2020 decision to the National Appeals Division (NAD), an independent office within the USDA that conducts administrative appeals hearings of adverse program decisions.[7] During the course

---

[5] Although the Agency used the name "Chris Granger," record evidence reflects that the name is spelled "Chris Grainger." (*See, e.g.*, Doc. 16-3 at 33–35.)

[6] According to the NAP Basic Provisions, the payment amount a producer may receive is limited to $125,000 per person. (Doc. 16-3 at 213.)

[7] The NAD is responsible for adjudicating specified administrative appeals from adverse decisions by certain agencies within the USDA, including the Commodity Credit Corporation, the Farm Service Agency, and the FSA state, county, and area committees, including appeals from the "[d]enial of participation in, or receipt of benefits under, any program of an agency[.]" *See* 7 U.S.C. §§ 6991–7002; 7 C.F.R. §§ 11.1, 11.3.

of two hearings in March 2021, an administrative judge heard testimony regarding Brittany's role in the family farm operations and Harvey's explanation that the Veazey Plant Company receipt was in Chris Grainger's name "because the greenhouses give better prices if the farmers get together and they have one invoice and one delivery." (Doc. 16-2 at 59; *see also* Doc. 16-5 at 236.) Finding this testimony credible, the administrative judge ultimately determined that Brittany was an eligible producer and therefore that the Agency erred in reversing the COC's previous approval of Brittany's 2016 NAP claim. The administrative judge explained that Brittany bore the burden of proving that the Agency's decision to reverse her 2016 NAP claim approval was erroneous "by a preponderance of the evidence" and that she had met this burden. (Doc. 16-2 at 61.) As held by the administrative judge:

> I recognize that the crop input receipts for seeds and transplants were in Chris Grainger's name. But a second copy of the same receipt was provided [to] the COC in 2016 with [Brittany's] name and seven additional farmers written in. The COC meeting notes do not reflect that the COC relied on [Brittany's] receipts or found them insufficient. I find [Brittany's] and her husband's testimony about sharing in the risk of loss as a family farm credible based on their tone of voice, consistency in their testimony, and documents in the record corroborating their testimony. I conclude that the Agency erred when it concluded that [Brittany] was not an eligible producer under the 2016 NAP.

(*Id.* at 59 (citation omitted).) Consequently, finding that there was no misrepresentation about Brittany's eligibility status, the administrative judge

7

concluded that the Finality Rule applied and therefore barred the Agency from "imposing NAP sanctions and demanding repayment." (*Id.* at 60.)

### E. NAD Director Review

The Agency appealed the administrative judge's decision to the NAD Director on the grounds that substantial evidence supported the FSA deputy administrator's earlier determination that Brittany had misrepresented her status as an eligible producer but that substantial evidence did not support the administrative judge's decision to reverse it.

After reviewing the entire record, the Director reversed, stating the administrative judge's determination was not supported by substantial evidence. (*Id.* at 87, 90.) Specifically in his decision, the Director, unlike the administrative judge, concluded the record did not show that Brittany was a producer who shared in the risk of producing the tomato crop. (*Id.* at 88.) According to him, none of the evidence presented, including Harvey's explanation for why the input receipt was in Chris Grainger's name, showed that Brittany was the sole producer of the tomato crop; rather, he determined that "the testimonial and documentary evidence tend to show that [her] husband or Daniels Farms was the sole producer of the tomatoes, and do not show that [Brittany] had an actual risk in the crop." (*Id.* at 89.)

The Director then determined that Brittany had misrepresented that she was an eligible producer of the tomato crop when filing her 2016 NAP claim, that the

8

COC erred in approving her claim based in part on the information she provided, that the administrative judge erred in his finding as to Brittany's producer status, and that the Finality Rule did not apply. (*Id.* at 89–90.) This decision constituted the USDA's final decision under 7 U.S.C. § 6999.

## II.   STANDARD OF REVIEW

Summary judgment "is particularly appropriate in cases in which a district court is asked to review a decision rendered by a federal administrative agency." *Mahon v. U.S. Dep't of Agric.*, 485 F.3d 1247, 1253 (11th Cir. 2007). "However, 'even in the context of summary judgment, an agency action is entitled to great deference.'" *Id.* (citation omitted).

Judicial review of a final agency determination is governed by the Administrative Procedure Act, which provides in part that a court shall set aside an agency's "action, findings, and conclusions" if they are "arbitrary, capricious, an abuse of discretion, unconstitutional, in excess of statutory authority, without observance of procedure as required by law, or unsupported by substantial evidence." *Id.* (citing 5 U.S.C. § 706); *see also* 7 U.S.C. § 6999; *Payton v. U.S. Dep't of Agric.*, 337 F.3d 1163, 1167 (10th Cir. 2003).

"To determine whether an agency decision was arbitrary and capricious, the reviewing court 'must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'"

9

*N. Buckhead Civic Ass'n v. Skinner*, 903 F.2d 1533, 1538 (11th Cir. 1990) (citation omitted).  The arbitrary and capricious standard is "exceedingly deferential," *Fund for Animals, Inc. v. Rice*, 85 F.3d 535, 541 (11th Cir. 1996), and "[t]he reviewing court is not authorized to substitute its judgment for that of the agency concerning the wisdom or prudence of the" decision, *Skinner*, 903 F.2d at 1539.  "Rather, the 'task of the reviewing court is to apply the appropriate . . . standard of review . . . to the agency decision based on the record the agency presents to the reviewing court.'" *Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corp of Eng'rs*, 87 F.3d 1242, 1246 (11th Cir. 1996) (alterations in original) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985)).  "If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."  *Id.* (quoting *Fla. Power & Light Co.*, 470 U.S. at 744).

### III.   DISCUSSION

The parties have filed opposing summary judgment motions disputing whether the Director, in conducting his review, erred when he reversed the

administrative judge's fact-driven conclusion that Brittany did not misrepresent her status as an eligible producer under NAP.[8]

Brittany argues the evidence she presented to the administrative judge—including her certified acreage report, the invoices from Veazey Plant Company, and the hearing testimony—was sufficient evidence to support the administrative judge's conclusion that she was an eligible producer. Brittany also contends the Director acted arbitrarily and capriciously when he discounted the Danielses' testimonial evidence that the administrative judge otherwise found credible. In contrast, the Agency, pointing to certain post-hearing evidence such as receipts and checks in the name of Harvey Daniels or Daniels Farm, argues the Director's decision was not in error.

As a preliminary matter, in its summary judgment briefing, the Agency raises the question of the standard of review applicable at the NAD director review stage since the statute governing NAD procedures is silent as to the applicable standard of review. (*See* Doc. 24 at 3–5.) It is indeed a critical issue because under the substantial evidence standard of review, the Director must affirm the administrative judge's decision if it is supported by substantial evidence, "[e]ven if the evidence preponderates against [the administrative judge's] findings," *see Ellison v. Barnhart*,

---

[8] The parties also dispute whether Brittany was entitled to equitable relief. Since the Court has determined this matter is due to be remanded back to the Director, the Court does not address Brittany's request for equitable relief.

11

355 F.3d 1272, 1275 (11th Cir. 2003) (per curiam) (citation omitted). By contrast, under *de novo* review, the Director would be free to disregard the administrative judge's factual findings and reach his own conclusions. *See In re Piper Aircraft Corp.*, 244 F.3d 1289, 1295 (11th Cir. 2001) (explaining that under *de novo* review, the reviewer must make an independent judgment "without deference to [the factfinder's] analysis and conclusions").

The Court sees no dispute here, as the scope of the Director's review (substantial evidence) is clearly spelled out in the NAD regulations:

> The Director will conduct a review of the determination of the Hearing Officer[9] using the agency record, the hearing record, the request for review, . . . and such other arguments or information as may be accepted by the Director, in order to determine whether the decision of the Hearing Officer is supported by *substantial evidence*.

7 C.F.R. § 11.9(d)(1) (emphasis added). Accordingly, substantial evidence is the standard of review the Director was required to apply—not *de novo*.

The substantial evidence standard is not a high threshold to satisfy: "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Thus, substantial evidence exists even when two inconsistent conclusions can be

---

[9] Here, the regulation's reference to the "Hearing Officer" also includes the administrative judge as "an individual employed by the Division who conducts the hearing and determines appeals of adverse decisions by any agency." 7 C.F.R. § 11.1.

drawn from the same evidence." *Stone & Webster Constr. v. U.S. Dep't of Labor*, 684 F.3d 1127, 1133 (11th Cir. 2012). Since the substantial evidence standard is "highly deferential" to the administrative judge's factual findings, the Director "must affirm the [administrative judge's] decision unless there is no reasonable basis for that decision"—that is, the Director must conclude the administrative judge's decision was unreasonable based on the record. *Adefemi v. Ashcroft*, 386 F.3d 1022, 1029 (11th Cir. 2004) (en banc).

Although the Director was required to review the administrative judge's decision for substantial evidence, it is unclear, and highly doubtful, that he actually did so. Rather, it appears that the Director reversed the administrative judge based on a *de novo* review, contrary to the "procedure required by law." *See* 5 U.S.C. § 706(2)(D); 7 C.F.R. § 11.9(d)(1). Two primary observations drive this conclusion.

First, while the Director acknowledged his responsibility to review the administrative judge's determination for substantial evidence, other statements in his reasoned decision strongly suggest that he reviewed the initiating agency action (the COC's decision) rather than the administrative judge's decision. (*See* Doc. 16-2 at 88 ("Accordingly, I must determine whether the COC's decision was erroneous."); *id.* ("For these reasons, I find that the COC's decision to approve [Brittany's] Notice of Loss was erroneous.").)

Second, and more importantly, insofar as the Director reviewed the administrative judge's decision, the Director failed to acknowledge evidence that supported the administrative judge's decision or to directly explain either why such evidence did not constitute substantial evidence or why the administrative judge's finding was unreasonable on the eligible producer issue.  For example, the Director stated, "[Brittany] has not provided receipts that she incurred any costs in growing the crop, with the exception of an invoice that originally showed that 175,560 tomato plants were sold to Chris Grainger," and acknowledged that this invoice was updated to include Brittany's name because she was "*purportedly* included in the sale." (*Id.* at 88 (emphasis added).)  The Director went on to state that Brittany had not shown she was an eligible producer because "[t]here are no records in the evidence to show [Brittany] paid Chris Grainger . . . for her share of the transplants," and because there was evidence suggesting Harvey or Daniels Farms was the producer of the tomato crop.[10] (*Id.* at 88–89.)  But the Director failed to discuss the *testimonial* evidence that Chris Gainger had been paid, (Doc. 16-5 at 239 (Q: "So Chris Gra[i]nger bought the seeds and then you turned around — you and your wife turned around and paid Chris Gra[i]nger back for what your portion?"   A: "That's

---

[10] Notably, neither Harvey Daniels nor Daniel Farms were one of the eight names listed on the invoice from Veazey Plant Company to Chris Grainger that Brittany submitted with her 2016 NAP claim.

correct.")), nor did the Director cite any NAP rules or regulations[11] or otherwise explain why the Danielses' testimonial evidence that would support the administrative judge's finding had to be discounted or was wrong.[12]

From all that appears, the Director made his own credibility, weighing-of-the-evidence, and fact-finding decisions when he decided that direct written proof of payment by Brittany for seed or plants was necessary proof of producer eligibility rather than determining whether the administrative judge's finding on the eligible producer issue was a reasonable one based on the entirety of the record. This apparent re-weighing of the evidence and ignoring other evidence is incompatible

---

[11] The only NAP regulation the Director cites when discussing whether Brittany had shown she was an eligible producer is 7 C.F.R. § 718.2, which merely provides the definition of a producer. This regulation does not address what specific type of evidence an individual must provide to show their status as an eligible producer, and thus it is not clear why, based on this definition alone, it was unreasonable for the administrative judge to conclude that Brittany was an eligible producer based on the testimonial evidence and the copy of the invoice that included her name.

[12] The Court recognizes that the Director did discuss the two portions of the Danielses' testimony that the administrative judge directly referenced in his decision: (1) Brittany's testimony about her role in the family farm operations, and (2) Harvey's explanation as to why the receipts for the tomato transplants were in Chris Grainger's name. The Director went on to reason that this testimonial evidence did not show Brittany was the sole producer of the tomato crop. That may be so, but under a substantial evidence review, the Director cannot limit his review to only the evidence cited by the administrative judge. *See* 7 C.F.R. § 11.9(d)(1). Rather, the Director must affirm the administrative judge's decision if it is "supported by reasonable, substantial, and probative evidence *on the record considered as a whole*." *Adefemi*, 386 F.3d at 1027 (emphasis added) (citation omitted); *see also Schering-Plough Corp. v. F.T.C.*, 402 F.3d 1056, 1063 (11th Cir. 2005) (under a substantial evidence review, the reviewer must consider "*all* of the evidence when drawing [his] conclusions about the reasonableness of an agency's findings of fact"). Thus, it was erroneous for the Director to conclude that Brittany did not have an actual risk in the crop based in part on the absence of documentary evidence that Brittany paid Chris Grainger for her share of the tomato transplants while ignoring testimonial evidence that this payment was made—at least not without explaining why such testimonial evidence had to be discounted.

with the substantial evidence review with which the Director was tasked. *See Stone*, 684 F.3d at 1133 ("The substantial evidence standard limits the reviewing court from 'deciding the facts anew, making credibility determinations, or re-weighing the evidence.'" (citation omitted)). The question for the Director was not whether the Director "could support alternative factual findings with substantial evidence, but whether the [administrative judge] could support [his] original findings with substantial evidence." *Id.* (citing *Adefemi*, 386 F.3d at 1029). And it is possible for the administrative judge's decision to be supported by substantial evidence even if the record likewise supports a contrary conclusion, *see id.* at 1132, and even if "the evidence preponderates against the [administrative judge's] findings." *Ellison*, 355 F.3d at 1275. That there may be evidence that weighs against the administrative judge's conclusion alone is not a sufficient reason for the Director to reverse—the record must compel it. *See Adefemi*, 386 F.3d at 1027.

Simply put, it is not clear whether the Director improperly reviewed the administrative judge's factual determinations *de novo* rather than for substantial evidence. As such, the Director's decision must be set aside as contrary to the "procedure required by law." *See* 5 U.S.C. § 706(2)(D); *see also Cardinal Land Conservancy, Inc. v. U.S. Dep't of Agric.*, No. 1:18-cv-00534, 2022 WL 798360, at *10 (S.D. Ohio Mar. 16, 2022) (setting aside a decision issued by the NAD Director reversing an administrative judge's conclusions because it was unclear whether the

16

Director reviewed the decision under the proper substantial evidence standard). Remand to the Director for reconsideration of the administrative judge's decision under the correct standard of review is appropriate. *See Cardinal Land Conservancy, Inc.*, 2022 WL 798360, at *10; *see also Fla. Power & Light Co.*, 470 U.S. at 744. On remand, the Director is instructed to review the administrative judge's decision for substantial evidence, bearing in mind that "[t]he substantial evidence standard limits the reviewing court from 'deciding the facts anew, making credibility determinations, or re-weighing the evidence.'" *Stone*, 684 F.3d at 1133 (citation omitted). The Court expresses no view as to the ultimate outcome on remand.

## IV.   CONCLUSION

Accordingly, it is **ORDERED** as follows:

1. Petitioner Brittany Daniels's *Motion for Summary Judgment* (Doc. 19) is **GRANTED in part**, to the extent that it seeks an order setting aside the Director's reversal of the administrative judge's decision, and **DENIED in part** to the extent that it requests the Court to reinstate the administrative judge's decision;

2. Respondents' *Motion for Summary Judgment* (Doc. 20) is **DENIED**; and

3. The NAD Director's Decision is **SET ASIDE**, and this case is **REMANDED** to the Director for further proceedings consistent with this opinion.

**DONE**, on this the 24th day of February 2023.

R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE